

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-7-2004

# Rachid v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3613

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Rachid v. Atty Gen USA" (2004). *2004 Decisions.* Paper 860.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/860

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3613

BILAL RACHID,
Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES

Appeal from the Board of Immigration Appeals
(BIA No. A77-027-869)

Argued: September 16, 2003

Before: McKEE, SMITH, and COWEN, Circuit Judges.

(Filed: April 7, 2004)

TIMOTHY R. BLOCK, ESQ.  (Argued)
LAURA ADJANGBA, ESQ.
Legal Services of New Jersey
100 Metroplex Drive, Suite 402
Edison, NJ    08818
Attorney for Appellant

ROBERT D. McCALLUM, JR., ESQ.
Assistant Attorney General
MARK C. WALTERS, ESQ.
Assistant Director
WILLIAM C. MINICK, ESQ.
TERRI J. SCADRON, ESQ.
MARY JANE CANDAUX (Argued)
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

P.O. Box 878, Ben Franklin Station
Washington, DC 20044
<u>Attorneys for Appellees</u>


OPINION

McKEE, <u>Circuit Judge</u>.

Bilal Rachid appeals the BIA's decision affirming the denial of his applications for asylum, withholding of removal and relief under the Convention Against Torture. For the reasons that follow, we will affirm.

**I.**

Rachid arrived in this country on May 4, 1998 without any travel documents. He claimed to be an Algerian national and he was seeking political asylum. App. at 169a. He was immediately detained by the INS and interviewed. App. at 169a. During the interview, he stated that he fled Algeria because he was afraid he would be killed after his brothers were killed in the middle of the night by government soldiers. App. at 172a, 174a. The INS interviewed Rachid again on May 15. App. at 162a-67a. During the second interview, Rachid again stated that he was afraid to go back to Algeria due to the civil war there and his brothers' shooting. App. at 169a. He also responded "no" to questions about whether he had ever been threatened, arrested or detained; had encountered problems with the police or military; or was ever mistreated, abused or tortured. App. at 164a-65a. His case was then referred for a hearing to see if he qualified for asylum under

2

8 U.S.C. § 1158.[1] App. at 167a-68a.

On May 28, Rachid appeared pro se at his asylum hearing and withdrew his asylum application. App. at 152a-53a. In September, he attempted to reinstate his asylum application by submitting a written asylum application. App. at 150a. The attempt met with no success. However, a year and a half later, his asylum application was reinstated with the help of counsel, and Rachid submitted a second written asylum application. App. at 133a-34a, 138a-39a. In that petition, he stated for the first time that the Algerian police had accused him of belonging to the Islamic Salvation Front ("FIS"); that the police had arrested him three times; and that they had jailed, beat, starved and tortured him for days following his arrest. App. at 133a-34a. He requested asylum, withholding of removal, or withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). App. at 3a.

Rachid had his second hearing before an IJ in July 2001. App. at 36a. At the hearing, Rachid testified that the Algerian military police arrested him three times in

---

[1] 8 U.S.C. § 1158(b)(1) (2004) states that IJs should grant applicants asylum as a matter of discretion based on whether the applicant proves he/she meets the definition of "refugee" under 8 U.S.C. § 1101(a)(42)(A) (2004). *See Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001).

Section 1101(a)(42)(A) defines a refugee as:
> any person who is outside any country of such person's nationality. . . who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .

February, June and August 1995, and that the police beat and tortured him using electric shocks while he was detained. App. at 46a-57a. He also testified that the police interrogated him regarding his connections with FIS the first and third times he was arrested. App. at 49a, 56a. Rachid claimed that he did not tell his entire story during his first two INS interviews because he was frightened, and that he did not trust the person who helped him complete his first written asylum application enough to tell that person about his arrests and torture. App. at 66a, 77a-78a, 81a-82a. He also submitted the affidavit of a doctor who examined him, David S. Kang, M.D., which stated that his scars were clearly indicative of torture. App. at 107a-10a.

The IJ denied Rachid any relief. He denied Rachid asylum because he found that Rachid's testimony regarding his arrests and torture was unbelievable. R. at 18a. He found Rachid's excuses for his failure to mention these things during his first two interviews and in his first written asylum application were implausible, concluding that "at some point [Rachid] decided to embellish his story, particularly the arrests. What we have is, in my opinion, a recent fabrication of a story." R. at 17a. The IJ then found that Rachid's consistent story about his brothers being killed did not make out his asylum claim, either. App. at 17a-18a. He also refused to grant Rachid withholding of removal, stating that withholding required Rachid to meet a higher standard of proof than granting asylum did. R. at 18a-19a.

The Board of Immigration Appeals (BIA) affirmed the IJ's decision. It agreed

4

with the IJ that "contradictions, addressed in detail in his decision, were not resolved by the applicant, either during the proceedings or on appeal." R. at 2a. Rachid timely filed this petition, requesting review of the BIA's decision to affirm the order of removal against him.

## II.

Rachid raises three arguments before this court.[2] First, he argues that the IJ should not have found his later story about being arrested and tortured unbelievable because this Court has recognized that an alien's fear can explain differences between the story the alien tells upon arrival and the story he/she tells later. Second, he argues that the IJ should have accounted for the medical evidence of his torture when the IJ analyzed his asylum claim. Finally, he argues that the IJ should have granted his petitions for withholding of removal generally or withholding of removal under the Convention Against Torture (CAT). We address these issues seriatim.

## A.

---

[2] We have the authority to review the BIA's decision to affirm an order of removal under 8 U.S.C. § 1252(b) (2004). Because the BIA adopted the IJ's decision, we review the IJ's administrative findings of fact for substantial evidence. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). Such review requires us to treat the IJ's findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003) (internal citation omitted). However, even under this deferential standard of review, an IJ must offer "specific, cogent reasons for his or her disbelief" when rejecting a witness's positive testimony because in his or her judgment it lacks credibility in order for his/her rejection of such testimony to be supported by substantial evidence. *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir. 1998) (internal citation omitted).

Rachid states that the IJ erred in making an adverse credibility determination against him due to his failure to mention his arrests and torture in his first two INS interviews and in his first written asylum application. He argues that this was error because *Balasubramanrim v. INS*, 143 F.3d 157 (3d Cir. 1998), holds that inconsistencies between the story an alien initially tells and the story he/she tells later is not enough to discount the alien's testimony.

We disagree. Upon his arrival in the U.S., Balasubramanrim was immediately detained and interviewed in English, a language in which he did not have good competency. During the interview, he was asked whether he had been arrested or tortured and responded only that his brother had been arrested. He subsequently described mistreatment at the hands of his home country's government and a rebel group within the country in a written asylum application, and testified to the same matters in his first hearing in front of an immigration judge. *Id*. at 158-60. The IJ denied Balasubramanrim's application, finding the petitioner's later statements unbelievable because he had told the officers at the airport that he had never been arrested. *Id*. at 160. The BIA affirmed. *Id*. at 161.

Subsequently, this Court found that the IJ and BIA placed undue reliance on the airport interview. *Id*. at 162. We stated that an arriving alien who has suffered abuse during interrogation by government officials in his home country may be reluctant to reveal such information during the first meeting with government officials in this country.

6

*Id.* at 163. We then held that "some inconsistencies between the airport statement and [the petitioner's] testimony before the immigration judge [were] not sufficient, standing alone, to support the Board's finding that [the petitioner] was not credible." *Id.* at 164.

It is clear that there were more than just a few inconsistencies between the airport statement and the petitioner's testimony in the case at hand, though, giving the IJ appropriate grounds to distinguish Rachid's situation from *Balasubramanrim*.[3] The IJ's decision notes that, unlike Balasubramanrim, Rachid repeated that he had not been arrested or tortured in response to direct questions in a lengthier interview 10 days after the initial airport interview and in his first written asylum application submitted several months after the initial interview. He also notes that the cases can be distinguished because Rachid's airport interview was conducted in a language, French, in which Rachid's competency is uncontested. These are significant differences between the two cases that allowed the IJ to distinguish them and find that Rachid's inconsistent testimony was unbelievable. We will affirm the IJ's rejection of Rachid's testimony that he was tortured and arrested.

**B.**

---

[3] The IJ does not actually name *Balasubramanrim* but states enough details about the case that it is clear he is referring to it: "[T]his Court is mindful of the Sri Lanka case . . . in which the 3rd Circuit. . . has advised Immigration Judge's (sic) to be very careful concerning airport, or in this case airport and seaport statements. . . .[T]hat case involved a Sri Lankan where the statement was taken in English, not the language of the respondent." R. at 14a.

7

Rachid's final argument is that the IJ's decision should have addressed the medical evidence because it establishes that he was tortured, and his torture establishes that he was persecuted such that he is eligible for asylum.[4]

The medical evidence at issue is the affidavit of David S. Kang, M.D., that Rachid submitted to the IJ at his second hearing. In this affidavit, Dr. Kang concludes that Rachid had been a victim of torture because Rachid's explanations of scars and injuries were consistent with his physical findings. The IJ's decision refers to Dr. Kang's testimony once, stating that Rachid was "examined by a Dr. Khan (sic) who he spent an hour and a half with and told him the story as to what happened to him in Algeria concerning the arrests, the beating and the killing of his brothers and his flight into the United States. The doctor's report was admitted into evidence." R. at 10a.

This court has found that an affidavit reporting that an examination of an asylum applicant indicated torture is "powerful evidence." *Obianuju Ezeagwuna v. Ashcroft*, 301 F.3d 116, 132 (3d Cir. 2002). Even such important evidence can not help Rachid here, however. The IJ's decision not to grant asylum was based on his finding that the petitioner's later testimony/application was inconsistent with his earlier ones, and the doctor's opinion does not determine whether Rachid's later allegations of torture at the hands of government soldiers were true or false. Dr. Kang does not try to pinpoint when

___

[4] We noted in *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993), that the BIA has said that torture can establish the persecution necessary to receive asylum.

in time the torture occurred or at whose hands it happened; his testimony leaves open the possibility that Rachid was tortured this way but not under the circumstances he described. Because the doctor's affidavit does not compel a different conclusion than the one the IJ reached, we can not overturn the IJ's findings that the petitioner was ineligible for asylum.

## C.

Rachid also argues that the IJ should have found him eligible for withholding of removal. He states that he meets the criteria for withholding of removal generally because he has established that he suffered past persecution and will suffer future persecution due to his political opinion, and for withholding of removal under CAT because he established that he was tortured. He asked this Court to reverse the IJ's decision and enter an order prohibiting his removal.

The IJ explains his decision to deny withholding of removal, albeit briefly. After stating that Rachid was not eligible for asylum, he states:

> Since withholding of removal is a higher standard, I must deny that, as well. Since I do not believe his testimony concerning his arrests, the mere fact that he may have been in the cross fire, an innocent family in a civil war, does not lead me to believe that he would be tortured if he returned to Algeria. He has not convinced me that the government of Algeria or its agents would be interested in him since I have not found him credible. I will deny that application as well.

R. at 18a-19a. In summary, the IJ denies withholding of removal because he finds that Rachid can not be eligible for such relief if Rachid could not meet the lower standard for

9

asylum eligibility.

We agree with the ALJ that Rachid could not meet the standards for withholding of removal or CAT relief if he did not meet the criteria for asylum. To be granted asylum, a petitioner must prove only that he/she has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158. Such a fear of persecution can be well-founded even when there is less than a 50 percent chance of the occurrence taking place. *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001). But he must prove that he faces a "clear probability of harm" upon return to his home country to qualify for withholding of deportation, *Chang v. INS*, 119 F.3d 1055, 1065-66 (3d Cir. 1997); this standard requires him to establish at least a 51 percent chance of harm. Similarly, the standard to establish eligibility for CAT relief requires Rachid to prove by a preponderance of the evidence that he would be subject to torture upon return to his home country. 8 C.F.R. § 208.16(c) (2004). Because it is more difficult to establish eligibility for withholding of removal generally and CAT relief than to establish eligibility for asylum, no one ineligible for asylum could possibly be eligible for withholding of removal under either test.

**IV.**

For the above reasons, we will affirm the district court.

10